IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MIDWEST HOLDING #7, LLC,

   Appellant,

    v.

PAUL H. ANDERSON, JR.
Trustee,

   Appellee.

CIVIL ACTION FILE
NO. 1:07-CV-2830-TWT

OPINION AND ORDER

This is a bankruptcy appeal. It is before the Court on the Appellant Midwest Holding # 7, LLC's appeal of the Bankruptcy Judge's Order granting the Trustee's Motion for Summary Judgment. For the reasons stated below, the judgment of the Bankruptcy Court is AFFIRMED.

I. Background

The facts are undisputed. In 2002, the debtor, Tanner Family, LLC, entered into a lease agreement with Midwest Holdings, LLC for space in a shopping center for a Chapter 11 Bookstore. The lease was for a term of 5 years. But by the end of 2005, the debtor wanted out. On August 9, 2005, the parties entered into a Lease Termination Agreement. The Termination Agreement called for the payment of two sums. The first was $15,215.00 for July and August 2005 rent. These payments are

not at issue in this case. The second was an $87,172.50 lease termination fee. The agreement stated that the debtor would "not be further obligated to [Midwest] (nor shall Debtor be entitled to any credit) for any amounts pursuant to the Lease." The debtor made both payments before the end of August 2005 and moved out.

The debtor filed a Chapter 7 bankruptcy petition less than 90 days after payment of the termination fee. The Trustee brought this action to recover the lease termination fee from Midwest as a preferential transfer under 11 U.S.C. § 547. In order to void a transfer under section 547(b), the trustee must prove that the transfer was "a transfer for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). The Trustee and Midwest filed cross-motions for summary judgment. The only disputed issue concerns the application of section 547(b)(2). The Bankruptcy Court, relying exclusively on In re Upstairs Gallery, 167 B.R. 915 (B.A.P. 9th Cir. 1994), held that the payment of the $87,172.50 was "a transfer for or on account of an antecedent debt owed by the debtor before such transfer was made," and granted the Trustee's Motion for Summary Judgment. Midwest has brought this appeal. The issue is whether the Bankruptcy Court erred by treating the lease termination fee as a "a transfer for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). The District Court has jurisdiction to hear appeals from final judgments and orders of the

Bankruptcy Court. 28 U.S.C. § 158(a). Review is *de novo* as to conclusions of law. In re Goerg, 930 F.2d 1563, 1566 (11th Cir. 1991).

## II. Discussion

As noted above, the issue on appeal is whether the Bankruptcy Court erred by treating the lease termination fee as a "a transfer for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). The Bankruptcy Code does not define the phrase "antecedent debt," and the parties do not cite to any binding Eleventh Circuit case law on this issue. Midwest contends that the lease termination fee was not for or on account of an antecedent debt, and even if it was, the antecedent debt was not "owed" before the transfer of money was made.

Because the Bankruptcy Court based its holding exclusively on In re Upstairs Gallery, 167 B.R. 915 (B.A.P. 9th Cir. 1994), a few words about the case are in order. The facts of Upstairs Gallery are identical in all material respects. Just as in this case, two parties entered into a lease agreement. Within ninety days of the lessee's bankruptcy petition, the parties agreed to terminate the lease in consideration of a $38,000 termination fee. Id. at 916. After filing for bankruptcy, the lessee-debtor, sought to avoid the transfer. The court held that because the "debt" arose on the date that the parties entered into the lease, it was "antecedent" within the meaning of § 547(b)(2).

The Code is silent on the definition of "antecedent debt." Some courts, including the court in Upstairs Gallery, have held that whether a debt is antecedent, as opposed to current, depends on whether the debtor incurred it before making the allegedly preferential transfer. See, e.g., In re Bridge Information Syss., Inc., 474 F.3d 1063, 1066-67 (8th Cir. 2007); In re Jones Truck Lines, Inc., 130 F.3d 323, 329 (8th Cir. 1997) ("A debt is antecedent is it was incurred before the allegedly preferential transfer."); In re Southmark Corp., 62 F.3d 104, 106 (5th Cir. 1995); In re Energy Coop., Inc., 832 F.2d 997, 1001 (7th Cir. 1987); In re Upstairs Gallery, 167 B.R. at 918; In re Pan Trading Corp., 125 869, 875 (Bankr. S.D.N.Y. 1991). According to the court in Upstairs Gallery, "[a] debt is incurred when the debtor first becomes legally obligated to pay." Upstairs Gallery, 167 B.R. at 918 (citing In re Matter of CHG Intern., Inc., 897 F.2d 1479, 1486 (9th Cir. 1990)). See also In re Matter of Emerald Oil Co., 695 F.2d 833, 837 (5th Cir. 1983) (a debt is incurred on the date that the debtor is obligated to pay for purposes of the "ordinary course of business" exception"); In re RDM Sports Group, Inc., 250 B.R. 805, 812 (Bankr. N.D. Ga. 2000).

But the court in Upstairs Gallery did not apply the "legally obligated to pay" test. Although it acknowledged that lease payment obligations traditionally arise when they become due and payable, it distinguished lease termination agreements.

Upstairs Gallery, 167 B.R. at 918 ("The fact that that debt would have extended into the future but for the settlement agreement does not change the antecedent nature of the debt."). It held that the debt arose on the date that the parties entered into the original lease agreement. And it rejected the lessor's argument that there was no legally collectible debt (and therefore no antecedent debt) because the rental payments had not yet come due. Id. Midwest argues that Upstairs Gallery was improperly decided. It argues that, technically, the lease termination fee did not extinguish an antecedent debt, because future rental payments are not antecedent debts.[1]

I agree with the result in Upstairs Gallery. Whether or not the obligation is "legally collectible" is not determinative. The obligation to make future payments, rental or otherwise, is unquestionably a "debt" under the Bankruptcy Code. A "debt" is defined as a liability on a claim. 11 U.S.C. § 101(12). And a "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, . . ." 11 U.S.C. § 101(5). In this case, the lease termination agreement had the effect of settling all claims, or debts, that would inevitably arise from the debtor's inability to make future rental payments. After all, the agreement itself

---

[1] Neither party contests the fact that in Georgia, rental payment obligations under a lease only arise on the first day of the month that the rent is due. See, e.g., Nickerson v. Candler Bldg., Inc., 156 Ga. App. 396, 399 (1980).

indicated that the Tanner Family would "no longer be obligated to" Midwest. Just because the debt, which arose on the date that the parties entered into a lease agreement, was contingent or unmatured, or not yet collectible on the date that the parties signed the agreement, does not mean that it was not a "debt." See In re Energy Coop., Inc., 832 F.2d at 1001 ("In other words, when a creditor has a claim against a debtor -- even if the claim is unliquidated, unfixed, or contingent -- the debtor has incurred a debt to the creditor."); see also In re Flooring Am., Inc., 302 B.R. 394, 401 (Bankr. N.D. Ga. 2003) (holding that the term "debt" and "claim" were coextensive in the context of a dischargeability action).

Furthermore, the fact that a lessor has to wait for the first of each month before collecting rental payments only means that the debt is "unmatured" or "contingent." And if one accepts that the lease agreement creates a debt, then logically, a settlement agreement for the purpose of extinguishing that prior debt is for or on account of an antecedent debt. See BLACK'S LAW DICTIONARY (8th ed. 2004) (defining "antecedent" as "[e]arlier; preexisting; previous;" and defining "antecedent debt" in the bankruptcy context as "A debtor's prepetition obligation that existed before a debtor's transfer of an interest in property").

In practical terms, the issue is: what did the $87,172.50 pay for? Did it pay to extinguish a debt that the debtor incurred back in 2002 when it originally leased the

property?  Or did it obtain something more than the mere extinguishment of future debt?  See Lewis v. Diethorn, 893 F.2d 648, 650 (3d Cir. 1990) ("What Eaton received was not the freedom from liability on antecedent debt, but the freedom from the risk of litigation, together with the rise in the value of the property which resulted when the *lis pendens* was lifted.").  Midwest concedes that the only thing of value that the debtor obtained in exchange for the $87,172.50 was the extinguishment of liability for future payments.

In my view, a lease termination fee, where the lessee-debtor obtained nothing of value except for a release from liability to pay future rent, is "a transfer for or on account of an antecedent debt owed by the debtor before such transfer was made." This view is also consistent with the purpose of the preference section of the Bankruptcy Code.  A broad interpretation of antecedent debt in the lease termination context facilitates the protection of other creditors that might get shortchanged by landlords that could insulate themselves from the bankruptcy process. See Union Bank v. Wolas, 503 U.S. 533 (1991) (citing H.R. Rep. No. 95-595, p. 177-178) ("First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation

through cooperation with all of his creditors.  Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section-that of equality of distribution.").  Any other interpretation risks creating a lease termination fee loophole.

Midwest argues that the Upstairs Gallery court's holding ignores the language of the statute, which says that the antecedent debt must be "owed" before the transfer. It argues that word "owed" is mooted out of the statute unless one defines owed as meaning legally collectible on the date of the transfer.  See In re Southmark Corp., 88 F.3d 311, 318 (5th Cir. 1996) ("SR & Z insists that a debt is not 'owed' until the debtor becomes 'bound to pay' it; that this 'owed' requirement further limits the definition of an antecedent debt. Not only does SR & Z fail to cite any authority for this suspect interpretation of the statute, but such an interpretation is contrary to established law.").  In context, the phrase "owed by the debtor before such transfer was made" is consistent with the broad definition of "antecedent debt."  The debt can be "owed," but not yet collectible for a variety of reasons.  Furthermore, common

usage of the word actually supports this interpretation.  I can owe someone a thousand dollars, and when she comes to collect, I can reply, "Yes, I owe you the money, but we agreed that you would not collect it until the end of the month."  See In re Valles Mechanical Indus., Inc., 20 B.R. 350, 352 (Bankr. N.D. Ga. 1982) ("[T]he mere fact that a bill is never sent does not mean that an obligation has not been created, but it means only that payment is not yet due.").  The statute does not say "collectible," it says "owed."  I will not speculate as to why Congress used the phrase "owed by the debtor before such transfer was made."  But it does seem to dovetail nicely with the section of the Code that deals with contemporaneous exchanges.  See 11 U.S.C. § 547(c)(1) (forbidding the trustee from voiding transfers "for whose benefit such transfer was made to be a contemporaneous exchange for new value").

### III.  Conclusion

For the reasons stated above, the Bankruptcy Court's Order and Judgment is AFFIRMED.

SO ORDERED, this 22nd day of April, 2008.

                                                                    s/ Thomas W. Thrash
                                                                    THOMAS W. THRASH, JR.
                                                                    United States District Judge